DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, the State of Ohio, appeals from a decision of the Summit County Court of Common Pleas, which granted the motion of Appellee, James G. Stahl, to prohibit the introduction at trial of certain hearsay statements made in the course of a medical exam. We reverse.
 I. {¶ 2} On December 23, 2003, an adult woman presented to the Richfield Police Department, claiming that she had been the victim of rape. Officer Amy Ellis recorded a statement for the purpose of filing charges and then drove the alleged victim to St. Thomas Hospital for treatment in the Developing Options for Violent Emergencies (DOVE) unit. DOVE is a specialized healthcare facility designed to provide expert care to victims of violent sexual assault.
 {¶ 3} Upon arrival, the victim met with Jenifer Markowitz, NP, RNc, WHNP, who offered immediate care and began a dialogue about the assault, in accordance with her experience and training, and in conformity with the DOVE purpose. The victim provided her medical history, described the assault and her resulting trauma, and explained the surrounding circumstances, in order to facilitate the medical exam and assure an appropriate course of physical and mental-emotional treatment. Although Officer Ellis was present, she did not ask questions or participate in the exam. According to DOVE policy, officers are permitted to be present, upon the victim's permission or request, but are forbidden from intervening or asking questions until the exam is complete. Notably, Officer Ellis had already questioned this victim at the police station.
 {¶ 4} Nurse Markowitz conducted the exam, which included collection of physical evidence and testing for sexually transmitted diseases, and prepared a discharge plan. A typical DOVE discharge plan would include medical prescriptions, follow-up treatment, and enhanced personal or family counseling to account for possible pregnancy, sexually transmitted disease, emotional distress, or contemplation of suicide. There is a special concern that the victim be discharged to a safe environment, where she can heal emotionally, recover from fear of the attacker, and have access to further counseling or crisis response.
 {¶ 5} The victim relayed to Nurse Markowitz that Mr. Stahl had been her boyfriend's boss, and that she had gone to his office to ask him to give her boyfriend his job back. According to the victim, Mr. Stahl greeted her warmly and led her to a vacant office where he offered that he would help her if she would do something for him. He then began to kiss and grope her. When she resisted, he grabbed her around the neck and forced her to her knees to perform oral sex. While pushing her to the floor, he hit the victim's head against a piece of furniture, and once she was down he held her by the head and neck while he straddled her shoulders, compelling her to continue the oral sex until he ejaculated into her mouth and face. When finished, he gave her a tissue and told her to go.
 {¶ 6} Nurse Markowitz indicated a number of reasons why this information is crucial to the exam: it creates a comfort level between the victim and herself, so that the victim can begin to feel safe, while she can begin to understand the victim's state of mind; it focuses immediately on the type and location of an anticipated injury; it defines the preliminary scope of the physical exam, allowing her to concentrate on certain probable injuries or concerns, or postpone secondary or minor concerns; it provides insight into the victim's descriptions, answers or explanations, so that she can determine if further or more probative questioning, investigation or examination may be warranted for the victim's well being; it brings the victim's medical history into perspective, in the event of otherwise unanticipated or unforeseen reaction or aggravation, due to the assault or the resulting treatment; it alerts her to any actions that the victim may have taken in response to the assault, such as washing or self medicating — some of which would be common to certain assault victims, but also those that may be unexpected, unpredictable or irrational but for the stress of the encounter; and it provides the information necessary to prepare a practical and beneficial discharge plan.
 {¶ 7} Nurse Markowitz explained that a full knowledge of the sexual assault also allows DOVE to collect physical evidence during the examination, in a thorough, timely and legally defensible manner, while minimizing the intrusion to the victim. Therefore, the exam includes aspects that are not specifically intended to treat the victim's physical condition, such as collection of clothing, DNA samples for the rape kit, and photos using ultraviolet light. However, when pressed about the purpose of DOVE, Nurse Markowitz insisted that its purpose is to ensure that victims of sexual abuse get the best available care, as timely as possible — which would likely not be available in an ordinary emergency room setting. Finally, she testified that the identity of the assailant allows for appropriate prescriptions in the complex treatment of certain diseases, such as HIV, and further ensures that DOVE will not unknowingly discharge the victim back into a dangerous situation.
 {¶ 8} Eventually, the police charged Mr. Stahl with rape in violation of R.C. 2907.02(A)(2), a first degree felony, and kidnapping in violation of R.C. 2905.01(A)(4), a first degree felony. Mr. Stahl pled not guilty, and the parties prepared for trial. However, the victim unexpectedly died prior to trial, as the result of an epileptic seizure unrelated to the alleged sexual assault. Thereafter, Mr. Stahl filed a motion to prohibit the State from introducing the statements the victim had made to Nurse Markowitz, arguing that introduction of such testimony would violate hisSixth Amendment right to confront his accuser under Crawford v.Washington (2004), 541 U.S. 36, 158 L.Ed.2d 177.
 {¶ 9} The trial court conducted a hearing during which both parties presented evidence, and ultimately granted Mr. Stahl's motion. The State timely appealed, asserting a single assignment of error for review.
 II. Assignment of Error
"The trial court committed error when granting the defendant's motion in limine and suppressing statements given by a patient to a nurse during medical examination."
 {¶ 10} The State alleges that the trial could erred in finding the victim's statements to Nurse Markowitz to be testimonial as set forth inCrawford v. Washington, and thereby granting the motion in limine. We agree.
 {¶ 11} The Sixth Amendment to the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In Crawford v. Washington, the United States Supreme explained that this, the Confrontation Clause, encompasses the concept of "testimonial" statements as determinative of who are "witnesses" for the purpose of such confrontation on questions of hearsay:
"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [Ohio v. Roberts (1980), 448 U.S. 56,65 L.Ed.2d 597], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." (Emphasis added.) Crawford v. Washington (2004), 541 U.S. 36,158 L.Ed.2d 177, 203.
Thus, the threshold determination becomes, whether the hearsay statements in question are classified as testimonial. Although theCrawford Court explicitly abstained from providing an exacting definition of testimonial, it did provide three formulations for such determination, without expressly adopting any. See id. at 203. They are, as aptly summarized by the First Circuit Court of Appeals:
"The Crawford Court declined to provide a comprehensive definition of testimonial statements. It did, however, provide three formulations of the core class of testimonial statements.
"[1] In the first, testimonial statements consist of ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.
"[2] The second formulation described testimonial statements as consisting of extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.
"[3] Finally, the third explained that testimonial statements are those made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
"While the Court declined to settle on a single formulation, it noted that, whatever else the term testimonial covers, it applies to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern abuses at which the Confrontation Clause was directed." (Internal citations, quotations and edits omitted; paragraph breaks and numbering added.) Horton v.Allen (C.A.1, 2004), 370 F.3d 75, 84, citing and quoting Crawford,158 L.Ed.2d at 193, 203.
Notably, questions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo. See United States v. Wilmore (C.A.9, 2004), 381 F.3d 868,871.
 {¶ 12} In the present case, it was generally conceded that the victim's statements to Officer Ellis for purpose of filing the police report fall squarely into the first formulation, and are indisputably testimonial. Because the victim is deceased (i.e., unavailable) and the police statement was not subject to prior cross examination, that statement not admissible against Mr. Stahl, as per the basic holding ofCrawford. See Crawford, 158 L.Ed.2d at 203. The pending dispute is whether the statements made by the victim to Nurse Markowitz at the St. Thomas Hospital DOVE facility fit within the "core class of testimonial statements" encompassed by the rule. Id. at 193. Based on the particular situation before us, we conclude that they do not.
 {¶ 13} The State argues that Crawford limits testimonial statements to those arising from official inquiry, in accordance with the theme, examples and plain language of the Crawford Court's opinion. See id. at 192-95. Accordingly, the State contends, statements made for the purpose of medical diagnosis and treatment are nontestimonial and thereby admissible as a well-settled exception to the hearsay rule. Mr. Stahl argues, and the trial court agreed, that the DOVE program is a police functionary to the extent that its operations create "circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 193 (third formulation). Assuming arguendo that the Supreme Court did intend this third formulation to govern the classification of potentially testimonial statements, then, standing alone, it would appear to encompass almost anything; yet, we do not read Crawford or the ensuing cases to afford such an expansive scope. Rather, our readings of these cases find prudent application based in specific facts and prevailing law.
 {¶ 14} Foremost, we recognize that the circumstances surrounding any such statements frame the classification, and that some hearsay statements, even if directed to police officers, need not be testimonial for the purposes of Crawford. Id. at 192 (noting that "not all hearsay implicates the Sixth Amendment's core concerns"). Cf. State v. Dever
(1992), 64 Ohio St.3d 401, 410 (instructing the trial court to consider the circumstances of a child victim's statements). For example, statements to co-conspirators or friends have been held to benontestimonial, on the basis that they would not reasonably be expected to be used at trial. See, e.g., Horton, 370 F.3d at 84 (admitting co-conspirator statements); United States v. Savoca (S.D.N.Y. April 16, 2004), 335 F. Supp.2d 385, 393 (admitting girlfriend's statements by concluding that an "element of officiality appears to be the hallmark of a `testimonial statement'"). Our sister court in the First District of Ohio drew a distinction between police "questioning" and police "interrogation," finding the former nontestimonial and therefore admissible. State v. Nix, 1st Dist. No. C-030696, 2004-Ohio-5502, at ¶ 77. Even 911 calls have been held to be nontestimonial, despite the fact that they are commonly known to be recorded and inevitably end up in court, because a 911 call is not so much testimony but a desperate plea for help. State v. Moscat (2004), 777 N.Y.S.2d 875 (admitting victim's statement from 911 call). From this understanding, we proceed to consider statements made for purposes of medical diagnosis or treatment.
 {¶ 15} Statements made for purpose of medical diagnosis or treatment are hearsay by definition, but are generally admissible under a particular exception. Evid.R. 801; 802; 803(4). Furthermore, under these rules, this Court has consistently held that a description of the encounter and even identification of the perpetrator are within the exception, as statements made for purposes of diagnosis or treatment. See, e.g., State v. Eagle, 9th Dist. No. 04CA0003, 2004-Ohio-3255, at ¶16; State v. Wade, 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, at ¶ 6; Inre Wheeler, 9th Dist. No. 20503, 2002-Ohio-1254, at *9. Therefore, we must reject any contention by Mr. Stahl that the statements describing the assault and identifying him as the perpetrator serve to render those statements beyond the conceivable scope of medical treatment and diagnosis. Rather, the question remains as to whether the statements are testimonial under the rule of Crawford.
 {¶ 16} Our sister court in the Tenth District of Ohio has held that "Crawford only applies to statements that are, in fact hearsay, and that are not subject to common-law exceptions to the hearsay rule." State v.Banks, 10th Dist. No. 03AP-1286, 2004-Ohio-6522, at ¶ 18. Seemingly, this would include statements for the purpose of medical diagnosis and treatment. See White v. Illinois (1992), 502 U.S. 346, 356 fn. 8 (acknowledging statements for medical diagnosis and treatment to be established common law hearsay exceptions). However, we are not prepared to make such a broad proclamation in this case. See State v. Armstrong,
11th Dist. Nos. 2001-T-0120 2002-T-0071, 2004-Ohio-5635, at ¶ 120
(exercising caution to prevent wholesale circumvention of the Confrontation Clause). We prefer the reasoning expressed by the Nebraska Supreme Court in State v. Vaught (2004), 268 Neb. 316, 682 N.W.2d 284. The Vaught Court considered the facts and circumstances of the case and concluded that a four year old victim would not reasonably anticipate that statements solicited from a doctor, purportedly for medical treatment, would ultimately be available at a later trial. Id. at 326. Therefore, the statements were deemed nontestimonial under Crawford. Id. at 328. Just as some other four year old, under different circumstances, may realize that such statements will be preserved for trial, an adult rape victim may or may not anticipate that her statements may be so used, depending on the surrounding facts and circumstances. Thus, we find the better approach to involve a consideration of the circumstances specific to the case. See Crawford, 158 L.Ed.2d at 192; Vaught,268 Neb. at 326 (limiting to the facts of the "present case").
 {¶ 17} In deciding in favor of Mr. Stahl, the trial court rested its decision on Crawford's third formulation of testimonial; that the DOVE program operates under "circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 158 L.Ed.2d at 193. In view of the surrounding circumstances, we disagree with this opinion on two common sense bases.
 {¶ 18} First, prior to giving any statement to Nurse Markowitz, the victim had already given a statement to Officer Ellis at the police station, specifically for the purpose of pressing charges and prosecuting the rape. Only after this was complete did Officer Ellis escort the victim to St. Thomas Hospital. We find it entirely reasonable that the victim, under this scenario, could have viewed these two people, and these two entities of police and hospital, as having separate and very distinct roles; the police officer to enforce retribution on the wrongdoer and the nurse to provide aid and comfort. Mr. Stahl emphasized, and we agree, that Nurse Markowitz was obviously collecting physical evidence on behalf of the police, and in no small quantity. The exam included photos, UV light, colposcope photos, swabs and dental floss, fingernail scrapings and hair particles, collection of her clothes and assessment of bruises or markings.
 {¶ 19} Unlike the uncomfortable feelings of insecurity or apprehension that may typify a rape victim's interaction with police authority, a victim may view a nurse in this situation as her own personal version of Dante's Virgil, guiding her through the battery of tests and indignities that succeed such a harrowing experience. This victim could likely feel far more at ease with this nurse than she would with a police officer, converse with her more intimately, and express emotions or sensitivities wholly unrelated to the prosecution of her attacker. Furthermore, having already completed her police statement, a victim may relate her version of the attack to a doctor or nurse without expectation that it would be publicly disclosed to her attacker, the court, or the whole world. Between the version of the assault provided to the officer and the other provided to the nurse, the substantive description may be similar, while the language, tone, emphasis and meaning may be very different. Therein lies the basic premise; one is for prosecution, one is for aid and treatment.
 {¶ 20} The second basis is that this victim could have reasonably believed that she was at DOVE for the purpose of providing physical evidence, without necessarily understanding that she was also providing testimonial evidence. As explained above, she had already provided the police with a formal statement, and as a subsequent step, Officer Ellis had driven her to St. Thomas Hospital for the medical exam. Mr. Stahl relies heavily on the consent form the victim signed upon her arrival as conclusive proof that she must have believed that her statements would be available for use at a later trial. So much so that he has attached it to his brief in this appeal. As the trial court emphasized this form as well, and it is relatively concise, it is worth replicating in its entirety:
 "DOVE Program
"CONSENT FOR FORENSIC EXAM AND RELEASE OF EVIDENCE
"I voluntarily consent to this forensic examination and collection of evidence. I have received a detailed description of the steps of the process and understand that I may withdraw my consent to any or all parts of this examination at any time. I authorize the release of evidence, information (including protected health information), clothing, colposcope photos, and photography documentation of injuries to a law enforcement agency for use only in the investigation and prosecution of this crime. I understand that if release of the Sexual Assault Evidence Collection Kit is not authorized, the kit will be kept at the SANE Unit for sixty days and then destroyed."
Notably absent from this release is any mention of statements made during the course of the examination, or any reference to verbal statements at all. A person not immersed in the practice of law, that is, a reasonable person, could reasonably conclude that the evidence in question is merely the physical evidence being collected, and not her intimate description of the abuse, humiliation and trauma she was forced to endure from her attacker and has recounted for the purpose of receiving some aid or comfort.
 {¶ 21} Based on our review of the statements, the circumstances and the case as a whole, we find that these statements were made for the purpose of medical diagnosis and treatment and were not so testimonial as to necessitate a finding that this victim must have expected that they would be available for later use at trial. As such, we conclude that the statements arising on the particular facts of this case arenontestimonial under our reading of Crawford, and therefore admissible under Evid.R. 803(4). This assignment of error is sustained.
 III. {¶ 22} The State's assignment of error is sustained. The decision of the Summit County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Baird, J. Concurs.
SLABY, P.J. Concurs in Judgment only.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)