OPINION
{¶ 1} Defendant-appellant Roosevelt Newell appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of felony domestic violence. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 4, 2004, the Stark County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. The victim was Tasheena McDonald. The indictment alleged that appellant had previously pleaded guilty to or been convicted of domestic violence. At his arraignment on June 11, 2004, appellant entered a plea of not guilty to the charge.
 {¶ 3} While the State's pretrial motion to hold McDonald as a material witness was granted, McDonald was never located. The matter proceeded to a jury without McDonald appearing as a witness, even though she had been subpoenaed.
 {¶ 4} At trial, Amanda Ruple testified that on July 2, 2003, she went to see fireworks in Canton with Tasheena McDonald, who, she testified, had a "personal relationship" with appellant. Transcript at 55. After the fireworks, Ruple pulled into an alley on her way to take McDonald home when a gray van containing two African — American men pulled up so close behind Ruple's car that she could not get out of her car. Ruple testified that someone then got out of the gray van and then "there was a lot of arguing going on, and eventually Tasheena [McDonald] opened the door and Tasheena was punched." Transcript at 56. According to Ruple, McDonald then grabbed the child that was in her lap and ran. After leaving her car to call police, Ruple went back to the same to make sure that the other kids in the car were okay. When she saw McDonald a little while after the incident, McDonald appeared "quite upset." Transcript at 57. Ruple identified appellant as the one who had punched McDonald. An audiotape of McDonald's 911 call was then played for the jury over appellant's objection. Appellant had objected to the "playing of the tape as being in violation of the confrontation clause . . ." Transcript at 59.
 {¶ 5} Officer Scott Prince of the Canton Police Department, who arrived on the scene after being dispatched, testified that McDonald had slight swelling around her right eye and that she appeared to be "upset and scared." Transcript at 43. As part of his investigation, the officer had McDonald fill out an incident report. Based on the allegations in such report, domestic violence charges were filed against appellant. Officer Prince further testified that since McDonald was afraid that "her boyfriend" was still in the area, the police went through the inside of her apartment. Appellant was not present.
 {¶ 6} Tasheena McDonald, who was not located despite a one week continuance of the trial to secure her attendance, was not present to testify at trial. For such reason, the trial court permitted the State to present McDonald's preliminary hearing testimony via a redacted transcript. At the preliminary hearing on May 13, 2004, Tasheena McDonald testified that she was living with appellant on July 2, 2003, and that the two got into an argument. According to McDonald, appellant smacked her in the face while the two were in an alley behind their house. On cross-examination, McDonald testified that she was still living with appellant as of May 13, 2004, and had been living with him since September 5, 2002. According to McDonald, the two were still involved in a relationship. McDonald, however, was unsure whether appellant was the father of her child.
 {¶ 7} While appellant did not testify at trial, he stipulated to a 1998 conviction for domestic violence.
 {¶ 8} At the conclusion of the evidence and the end of deliberations, the jury, on August 5, 2004, found appellant guilty of domestic violence. As memorialized in a Judgment Entry filed on August 9, 2004, the trial court sentenced appellant to a prison term of eleven months.
 {¶ 9} Appellant now raises the following assignments of error on appeal:
 {¶ 10} "I. The trial court erred in permitting the introduction of testimony by the alleged victim from a preliminary hearing and introduction of a 911 tape recording in violation of the appellant's constitutional confrontation rights.
 {¶ 11} "II. The appellant was erroneously convicted under a law which treated him as if he was married to the alleged victim, in violation of the ohio constitution's ban on such similar treatment."
 {¶ 12} This case comes to us on the accelerated calender. Appellate Rule 11.1, which governs accelerated calender cases, provides, in pertinent part as follows: "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 13} This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 14} Appellant, in his first assignment of error, argues that the trial court erred in permitting the introduction of McDonald's preliminary hearing testimony and of the audiotape recording of McDonald's 911 call in violation of appellant's constitutional right to confront and cross-examine the witnesses against him. Appellant specifically cites toCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354 in support of his argument.
 {¶ 15} The Sixth Amendment to the United States Constitution states, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" As noted by the court in State v. Dunivant, Stark App. No. 2003CA00175, 2005-Ohio-1497:[1] "In Crawford v. Washington, supra., the United States Supreme Court explained that this, the Confrontation Clause, encompasses the concept of "testimonial" statements as determinative of who are "witnesses" for the purpose of such confrontation on questions of hearsay:
 {¶ 16} "`Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [Ohio v. Roberts (1980),448 U.S. 56, 65 L.Ed.2d 597], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.' Crawford v. Washington (2004), 541 U.S. 36,158 L.Ed.2d 177, 203.
 {¶ 17} "Thus, the threshold determination becomes, whether the hearsay statements in question are classified as testimonial. Although theCrawford Court explicitly abstained from providing an exacting definition of testimonial, it did provide three formulations for such determination, without expressly adopting any. See id. at 203. They are, as aptly summarized by the First Circuit Court of Appeals:
 {¶ 18} "The Crawford Court declined to provide a comprehensive definition of testimonial statements. It did, however, provide three formulations of the core class of testimonial statements.
 {¶ 19} "[1] In the first, testimonial statements consist of ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.
 {¶ 20} "[2] The second formulation described testimonial statements as consisting of extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.
 {¶ 21} "[3] Finally, the third explained that testimonial statements are those made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
 {¶ 22} "While the Court declined to settle on a single formulation, it noted that, whatever else the term testimonial covers, it applies to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern abuses at which the Confrontation Clause was directed." (Internal citations, quotations and edits omitted; paragraph breaks and numbering added.)Horton v. Allen (C.A.1, 2004), 370 F.3d 75, 84, citing and quotingCrawford, 158 L.Ed.2d at 193, 203."" Id. at paragraph 7.
 {¶ 23} In the case sub judice, we find that the recording of the 911 tape is not testimonial under Crawford. As noted by the court in Statev. Stahl, Summit App. No. 22261, 2005-Ohio-1137, "[e]ven 911 calls have been held to be nontestimonial, despite the fact that they are commonly known to be recorded and inevitably end up in court, because a 911 call is not so much testimony but a desperate plea for help." Id. at paragraph 14. Furthermore, Crawford's holding only applies to "statements that are, in fact, hearsay, and that are not subject to common-law exceptions to the hearsay rule, such as excited utterance or present sense impression." State v. Banks, Franklin App. No. 03AP-1286, 2004-Ohio-6522
at paragraph 21. The 911 statements were admissible under both the excited utterance and present sense impression hearsay exceptions.[2]
See Banks, supra.
 {¶ 24} We further find that the trial court's admission of McDonald's preliminary hearing testimony did not violate appellant's right to confrontation. Preliminary hearing testimony is admissible if a defendant had an adequate chance to cross-examine the witness. See Crawford,
supra. at 57-58. Appellant contends that he was not permitted to adequately cross-examine McDonald during the preliminary hearing. We find, however, that appellant had the opportunity to cross-examine McDonald at the preliminary hearing and did, in fact, do so.
 {¶ 25} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 26} Appellant, in his second assignment of error, contends that the trial court committed plain error in allowing appellant to be tried and convicted of domestic violence in violation of R.C. 2919.25 when "recent changes to the Ohio Constitution by this State's voters prohibit the spousal protection of unmarried couples." Appellant specifically contends that the Defense of Marriage Amendment prevents the State of Ohio from recognizing any legal relationships between unmarried individuals, that R.C. 2919.25 recognizes such a relationship, and that, therefore, his conviction for domestic violence must be vacated. We disagree.
 {¶ 27} The Defense of Marriage Amendment, which was adopted by the voters of Ohio on November 2, 2004, and is codified in Section 11, Article XV of the Ohio Constitution, became legally effective 30 days after its adoption. Section 1b, Article II, Ohio Constitution. Section 11, Article XV provides:
 {¶ 28} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. Thisstate and its political subdivisions shall not create or recognize alegal status for relationships of unmarried individuals that intends toapproximate the design, qualities, significance or effect of marriage."
(Emphasis added).
 {¶ 29} As is stated above, appellant was convicted of domestic violence in violation of R.C. 2919.25. R.C. 2919.25 states, in relevant part, as follows:
 {¶ 30} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 31} "(B) No person shall recklessly cause serious physical harm to a family or household member.
 {¶ 32} "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
 {¶ 33} "(D)(1) Whoever violates this section is guilty of domestic violence." is a misdemeanor of the second degree.
 {¶ 34} In turn, R.C. 2919.25 states as follows: "(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:
 {¶ 35} "(1) "Family or household member" means any of the following:
 {¶ 36} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 37} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 38} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
 {¶ 39} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
 {¶ 40} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.
 {¶ 41} "(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 42} As an initial matter, we note that the offense of domestic violence in the case sub judice occurred on July 2, 2004. The Defense of Marriage Amendment did not become effective until December 2, 2004. As noted by appellee, the amendment was not in effect at the time of commission of the offense or when appellant was tried for the same and is, therefore, not applicable.[3]
 {¶ 43} Furthermore, while appellant maintains that his conviction for domestic violence must be vacated because R.C. 2919.25, the domestic violence statute, recognizes a legal status or relationship between unmarried parties that is similar to marriage and thus violates the second sentence of Defense of Marriage Amendment, we disagree. We concur with appellee that the intent of the Defense of Marriage Amendment was to prohibit same sex marriage. The Defense of Marriage Amendment was specifically adopted in response to the decision of the Massachusetts' Supreme Court in Goodridge v. Department of Public Health (2003),440 Mass. 309, 798 N.E.2d 941 that the Massachusetts' law limiting the protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked a rational basis and violated state constitutional equal protection principles. We agree with appellee that the Defense of Marriage Amendment has no application to criminal statutes in general or the domestic violence statute in particular. As noted by appellee, "[c]riminal statutes do not create rights; they prohibited (sic) certain conduct, it [2919.25] does not define marriage."
 {¶ 44} Furthermore, as recently noted by the court in State v.Rodgers, Franklin C.P. Case 05CR-269, 2005-Ohio-1730: "Ohio's domestic-violence laws have existed since 1979. Ohio courts have consistently construed these laws broadly to protect unmarried individuals — gay or straight. . . . . The proponents of the Marriage Amendment were undoubtedly aware of Ohio's broad statutory protections against domestic violence but did not suggest that their amendment would interfere with such legal protections.
 {¶ 45} "In construing amendments, Ohio courts presume the body enacting the amendment is aware of existing constitutional and statutory provisions and their judicial construction. State ex rel. Bd. of Cty.Commrs. v. Zupancic (1991), 62 Ohio St.3d 297, 303, 581 N.E.2d 1086. Therefore, had the proponents intended to alter Ohio's domesticviolence law, they would have drafted the Marriage Amendment accordingly. It was readily apparent by 2004 that Ohio's domestic-violence law referred to, but did do not create, a legal status that approximates marriage." Id. at paragraphs 29-30.
 {¶ 46} Based on the foregoing, we find that appellant's conviction for domestic violence was not unconstitutional.
 {¶ 47} Appellant's second assignment of error is, therefore, overruled.
 {¶ 48} Accordingly, the judgment of the Stark County Court of Common Plea is affirmed.
Edwards, J., Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] In Dunivant, the Ninth District Court of Appeals sat by assignment for the Fifth District Court of Appeals.
[2] Evid. R. 803(1) defines a present sense impression as: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(2) defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
[3] This Court is aware of two cases discussing such amendment. In both cases, the offense of domestic violence was committed after the amendments effective date. See State v. Rodgers (March 29, 2005), Franklin C.P. No. 05CR-269, 2005-Ohio-1730 (offense of domestic violence committed on or about December 30, 2004) and State v. Burk (March 23, 2005), Cuyahoga C.P. No. CR462510, 2005 WL 786212 (offense committed on January 6, 2005).