OPINION
{¶ 1} Appellant Michael Adams ("appellant") appeals the decision of the Stark County Court of Common Pleas that found him guilty of domestic violence. The following facts give rise to this appeal.
 {¶ 2} The incident resulting in charges against appellant occurred on December 2, 2004. On this date, the victim, Diana Higgins, went to a residence located at 545 E. Broadway, Alliance, to speak with appellant. Upon arriving at the residence, Ms. Higgins entered appellant's bedroom and attempted to wake him. Ms. Higgins was not able to wake appellant so she began talking to appellant's mother, Diane Adams. Shortly thereafter, appellant exited his bedroom screaming. Appellant grabbed Ms. Higgins, by the arm, and dragged her to his bedroom. Appellant threw Ms. Higgins, on the bed, put his hands around her throat, choked her and said, "I hope you die bitch."
 {¶ 3} When Ms. Higgins attempted to get away from appellant, he struck her in the face. At one point, Ms. Adams attempted to stop appellant from hitting Ms. Higgins and began striking appellant so Ms. Higgins could get away. Appellant turned on his mother and began hitting her. This allowed Ms. Higgins to escape into the bathroom.
 {¶ 4} However, appellant followed Ms. Higgins and tried to drag her back to the bedroom. Ms. Higgins grabbed the sink to prevent appellant from dragging her back to the bedroom. When appellant could not remove Ms. Higgins, from the bathroom, he kicked her in the side, stomach and back. Appellant stopped assaulting Ms. Higgins when Ms. Adams announced the police were on their way. The police observed red marks on Ms. Higgins' neck and also noticed swelling and bruising. As a result of her injuries, Ms. Higgins received treatment at Alliance Community Hospital.
 {¶ 5} On January 11, 2005, the Stark County Grand Jury indicted appellant for one count of domestic violence, a felony of the third degree. Prior to trial, appellant filed a motion to dismiss arguing that Issue 1 rendered the domestic violence statute, R.C. 2919.25, unconstitutional. This matter proceeded to a bench trial on February 22, 2005. Prior to the commencement of trial, the court denied appellant's motion to dismiss. At the conclusion of the case, the trial court found appellant guilty and sentenced him to a two-year prison term.
 {¶ 6} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 7} "I. APPELLANT'S FELONY CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND THE SUFFICIENCY OF THE EVIDENCE.
 {¶ 8} "II. THE APPELLANT WAS ERRONEOUSLY CONVICTED UNDER A LAW WHICH TREATED HIM AS IF HE WAS MARRIED TO THE ALLEGED VICTIM, IN VIOLATION OF THE OHIO CONSTITUTION'S BAN ON SUCH SIMILAR TREATMENT."
 I {¶ 9} In his First Assignment of Error, appellant maintains the trial court's verdict is against the manifest weight and sufficiency of the evidence. Appellant also contends the trial court should have found that he acted in self-defense. We disagree with both arguments.
 {¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based upon these standards that we review appellant's First Assignment of Error.
 {¶ 11} The trial court found appellant guilty of violating R.C.2919.25(A), which provides:
 {¶ 12} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 13} Appellant argues his conviction, for domestic violence, was against the manifest weight and sufficiency of the evidence because a review of the entire record reveals that the evidence does not contain the high degree of probative force and certainty necessary for a finding of guilt beyond a reasonable doubt. Upon review of the record in this matter, we find appellant's conviction is not against the manifest weight or sufficiency of the evidence.
 {¶ 14} Ms. Higgins testified that she was talking to appellant's mother when appellant entered the kitchen, grabbed her by the arm and dragged her to his bedroom. Tr. Feb. 22, 2005, at 18. Appellant hit Ms. Higgins, in the face, and choked her. Id. at 19. Appellant continued to pursue Ms. Higgins after she escaped into the bathroom. When Ms. Higgins would not let go of the sink, appellant began hitting and kicking her. Id. at 19. Appellant stopped only after he was told the police had been called. Id. at 20. Ms. Higgins sought medical treatment as a result of the injuries she sustained. Id. at 21.
 {¶ 15} Appellant also argues, under this assignment of error, that the trial court should have found that he acted in self-defense. In State v.Melchior (1978), 56 Ohio St.2d 15, the Ohio Supreme Court explained:
 {¶ 16} "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C.2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." Id. at paragraph one of the syllabus.
 {¶ 17} The burden to prove the affirmative defense of self-defense lies with the defendant. State v. Hawkins, Stark App. No. 2004CA00143,2005-Ohio-1065. In order to warrant an instruction on self-defense, a defendant must establish the following elements:
 {¶ 18} "(1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. * * *" State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
 {¶ 19} In the case sub judice, appellant did not present evidence sufficient to establish that he acted in self-defense. Instead, the record establishes that appellant was the aggressor and considerably taller and heavier than Ms. Higgins. As such, appellant could not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was to beat, kick and strangle Ms. Higgins. Thus, the trial court did not err when it determined appellant did not act in self-defense.
 {¶ 20} Appellant's First Assignment of Error is overruled.
 II {¶ 21} Appellant maintains, in his Second Assignment of Error, that he could not be convicted of domestic violence because Section 11, ArticleXV of the Ohio Constitution prevents the State of Ohio from recognizing any legal relationship between unmarried persons. We disagree.
 {¶ 22} We recently addressed this same argument in the case of Statev. Newell, Stark App. No. 2004CA00264, 2005-Ohio-2848. In concluding that the Defense of Marriage Amendment does not render R.C. 2919.25
unconstitutional, we explained as follows:
 {¶ 23} "* * * [T]he intent of the Defense of Marriage Amendment was to prohibit same sex marriage. The Defense of Marriage Amendment was specifically adopted in response to the decision of the Massachusetts' Supreme court in Goodridge v. Department of Public Health (2003),440 Mass. 309, 798 N.E.2d 941 that the Massachusetts' law limiting the protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked a rational basis and violated state constitutional equal protection principles. We agree with * * * [plaintiff] that the Defense of Marriage Amendment has no application to criminal statutes in general or the domestic violence statute in particular." Id. at 43.
 {¶ 24} In the Newell decision, we referred to a Franklin County Common Pleas Court decision wherein, the court stated that:
 {¶ 25} "`Ohio's domestic-violence laws have existed since 1979. Ohio courts have consistently construed these laws broadly to protect unmarried individuals — gay or straight. * * * The proponents of the Marriage Amendment were undoubtedly aware of Ohio's broad statutory protections against domestic violence but did not suggest that their amendment would interfere with such legal protections.
 {¶ 26} "`In construing amendments, Ohio courts presume the body enacting the amendment is aware of existing constitutional and statutory provisions and their judicial construction. State ex rel. Bd. of Cty.Commrs. v. Zupancic (1991), 62 Ohio St.3d 297, 303, 581 N.E.2d 1086. Therefore, had the proponents intended to alter Ohio's domestic-violence law, they would have drafted the Marriage Amendment accordingly.'"Newell at ¶ 44, ¶ 45, citing State v. Rodgers, 131 Ohio Misc.2d 1,2005-Ohio-1730, at ¶ 29, ¶ 30.
 {¶ 27} Therefore, for the foregoing reasons, we find appellant's conviction, for domestic violence, was not unconstitutional.
 {¶ 28} Appellant's Second Assignment of Error is overruled.
 {¶ 29} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J. Boggins, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to Appellant.