OPINION
{¶ 1} Defendant-appellant Monty Scott Hare appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count each of domestic violence, theft, receiving stolen property, burglary, aggravated menacing and abduction and two counts of kidnapping. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 28, 2005, the Delaware County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree, two counts of burglary in violation of R.C. 2911.12(A)(2), felonies of the second degree, one count of theft in violation of R.C.2913.02(A)(1), a felony of the fifth degree, and one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. Appellant also was indicted on one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree, one count of kidnapping in violation of R.C. 2905.01(A)(2), a felony of the second degree, one count of kidnapping in violation of R.C. 2905.01(A)(3), a felony of the second degree, and one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree. At his arraignment on January 31, 2005, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Subsequently, a jury trial commenced on March 29, 2005. The following testimony was adduced at trial.
 {¶ 4} On December 21, 2004, Officer Tildon John Hike, Jr. of the Delaware Police Department responded to a call. According to the officer, "[w]e were contacted by the resident who resides at 56 West Winter that a subject, Monty Scott Hare, which we had a warrant for, was at that residence." Transcript at 34. After knocking on the door of the apartment and receiving no response, the officers who were on the scene received permission from the resident, Willie Childress, to have maintenance open the door. Once the apartment door was unlocked, appellant was located inside the apartment and was arrested.
 {¶ 5} At trial, Willie Childress, the next witness to testify, testified that, in December of 2004, she was residing at an apartment located at 56 West Winter Street with her nine year old son and with appellant, who was her boyfriend. Childress, who was divorced, had been living with appellant since approximately October 31, 2004. Childress testified that, after October 31, 2004, appellant began verbally abusing her and would throw things at her and try to hit her with them. According to Childress, appellant hit her in the head with a telephone and with his hand.
 {¶ 6} On December 16, 2004, appellant became very angry after looking through Childress' purse and finding a credit card with her previous married name on the same. Childress testified that appellant, after finding the card, began calling her names and then took her wallet and threw it at her, hitting Childress in the head. After appellant punched her in the back, Childress ran out of the apartment with her son and went to a nearby address and had the police contacted. While she was waiting for the police, appellant appeared. According to Childress, once the police arrived, a police officer spoke with appellant and appellant agreed to leave and not return. Childress then gave a written report to the police.
 {¶ 7} Later the same evening, appellant appeared at Childress' apartment and kicked the door down after Childress refused to let him in. Appellant then began yelling and hitting Childress. After Childress told appellant that the police were on the way, appellant ran out of the apartment and left, taking Childress' car without her permission. Childress then called 911. The next day, Childress gave another written statement to police and an arrest warrant was issued for appellant.
 {¶ 8} Childress testified that appellant showed up again on December 18, 2004 and that she let him into the apartment because she was afraid of him. When Childress got up on December 19, 2004 to go to work, appellant told her "No, bitch, you're not going [to work]." Transcript at 65. According to Childress, appellant would not let her leave the apartment.
 {¶ 9} At one point, Childress went to the police station with appellant to "make out another statement, stating that I had lied about the first one." Transcript at 67. Childress testified that while it was appellant's idea for Childress to retract her former statement, she agreed to do so since she was afraid of appellant. The following is an excerpt from Childress' trial testimony:
 {¶ 10} "Q. So he stayed in the car and you walked in?
 {¶ 11} "A. Uh-huh.
 {¶ 12} "Q. And what happened: Who did you talk to?
 {¶ 13} "A. I talked to Officer Hudson, I believe that's her name and she had me fill out a statement and I did.
 {¶ 14} "Q. While you're now in the police station; He's out in the car?
 {¶ 15} "A. Uh-huh.
 {¶ 16} "Q. Why didn't you just tell the police, Hey, he's out in the car?
 {¶ 17} "A. My nephew, I was afraid for my nephew.
 {¶ 18} "Q. You were afraid of what he might do if you flipped on him?
 {¶ 19} "A. Yes, because my nephew wasn't there with me.
 {¶ 20} "Q. Where was he:
 {¶ 21} "A. He was at home. I was afraid of what he [appellant] would do to him.
 {¶ 22} "Q. You were afraid he was going to back to the apartment and hurt him?
 {¶ 23} "A. Yeah.
 {¶ 24} "Q. Were you afraid for your own person, too?
 {¶ 25} "A. Yes."
 {¶ 26} Transcript at 68-69. Childress testified that in her statement to the police, she indicated that she wanted all of the charges against appellant dropped.
 {¶ 27} Thereafter, on December 20, 2004, appellant permitted Childress to leave the apartment to obtain some items for him. Childress then went to a pay phone and called the police and told them that appellant was at her apartment. Appellant was then arrested. At trial, Childress testified that, after appellant was arrested, she told police that she previously had retracted her allegations against him because she was afraid of appellant.
 {¶ 28} Prior to the preliminary hearing in this matter, Childress received a number of letters from appellant asking her to drop the charges as well as phone calls from appellant's relatives. Childress testified that she recanted her story at the preliminary hearing since she was afraid that if appellant got out, he would hunt her down. As a result, after the preliminary hearing, the charges against appellant were dropped.
 {¶ 29} On January 23, 2005, when Childress arrived home from work, she heard someone in her apartment. Childress then called the police, who searched the apartment but did not find anyone present. After the police left, Childress discovered that a box of her checks was missing. After Childress reported the checks stolen, and indicated to police that she believed that appellant had taken them, appellant told the police that he had taken the checks by mistake and would return them. Three days later, on January 26, 2005, Childress opened her apartment door after appellant's brother knocked upon the same. Appellant then came up the stairs to Childress' apartment and threatened to kill Childress for calling the police. According to Childress, appellant then pushed her aside and pushed his way into her apartment.
 {¶ 30} At trial, Childress testified that she had received telephone calls from appellant earlier the same day "saying he was going to come over and kill everybody in the house." Transcript at 135. Appellant indicated to Childress during the calls that he had a gun. After receiving the telephone calls, Childress had contacted the police.
 {¶ 31} After appellant entered her apartment, the phone rang. When appellant went to answer the phone, Childress ran out the door and slammed it behind her. She then went to the neighbors and called the police. While Childress was at the neighbors, appellant left Childress' apartment. Childress then returned home. While the police were in Childress' apartment, Childress' telephone rang. Both Childress and Officer Johnson picked up the phone at the same time. The following testimony was adduced when Childress was asked about the telephone call:
 {¶ 32} "Q. Officer Johnson is in the apartment, the phone rings. Did you pick it up?
 {¶ 33} "A. Yes. And he picked up at the same time I picked up.
 {¶ 34} "Q. You had more than one phone?
 {¶ 35} "A. Yes.
 {¶ 36} "Q. So he was able to listen to the same conversation?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. And this was the defendant?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. And what did the defendant say?
 {¶ 41} "A. He asked if I was going to file charges on him, and please don't because he didn't want to go to prison. I told him that I was going to because I was tired of it and I wasn't going to live a life being afraid and stuff. And he said, `I'll get you before they get me, definitely.'
 {¶ 42} "Q. I'll get you before you get me.
 {¶ 43} "A. No, he said, `I will get you before they catch me.'
 {¶ 44} "Q. Before they catch me?
 {¶ 45} "A. Before they catch me. He made gun noises.
 {¶ 46} "Q. How did that sound on the phone? Repeat what you heard on the phone?
 {¶ 47} "A. Just clicking noises, like gun noises?
 {¶ 48} "Q. Okay. How did that make you feel; What were you thinking; what were you feeling when you heard those gun noises and you heard him say that?
 {¶ 49} "A. Really scared, really scared, because I knew that he meant it. I was really scared.
 {¶ 50} "Q. How long did that conversation last; do you remember?
 {¶ 51} "A. No, I don't recall.
 {¶ 52} "Q. And he did most of the talking?
 {¶ 53} "A. Yes. We kind of just listened." Transcript at 141-142. Childress then went down to the police station and filled out a report.
 {¶ 54} At the close of the State's case, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion. Thereafter, the jury, on March 30, 2005, found appellant guilty of all of the charges contained in the indictment except for one count of burglary. As memorialized in a Judgment Entry filed on May 13, 2005, appellant was sentenced to a total of twelve (12) years in prison. The Court, in its May 13, 2005 Judgment Entry, specifically stated as follows:
 {¶ 55} "It is hereby ORDERED that the Defendant serve a term of Four years in prison for a violations of R.C. 2919.25(A) as set forth in Count One, AND; a term of Eleven months in prison for a violation of R.C. 2913.02(A)(1) as set forth in Count Three, AND; Count Four merges with Count Three for sentencing purposes pursuant to R.C. 2941.25(A); the Defendant shall serve a term of Four years in prison for a violation of R.C.2911.12(A)(2) as set forth in Count Five, AND; a term of six months in the Delaware County Jail for a violation of R.C.2903.21(A) as set forth in Count Six, AND; a term of Four years for a violation of R.C. 2905.01(A)(3) as set forth in Count Eight. Count Nine merges with Count Eight for sentencing purposes pursuant to R.C. 2941.25(A).
 {¶ 56} "The sentences as to Counts One, Five, and Eight are Ordered to be served consecutively to one another. Counts Three and Six are Ordered to be served concurrently to each other and to all other Counts. . . ."
 {¶ 57} Appellant now raises the following assignments of error on appeal:
 {¶ 58} "I. THE TRIAL COURT ERRED BY NOT GRANTING THE APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
 {¶ 59} "II. THE TRIAL COURTS DECISION FINDING DEFENDANT GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 60} "III. IT WAS ERROR TO ALLOW A JUROR TO REMAIN ON THE JURY PANEL WHEN THAT JUROR HAD KNOWLEDGE OF THE APPELLANT AND HIS FAMILY.
 {¶ 61} "IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN WITNESSES WERE NOT CALLED.
 {¶ 62} "V. APPELLANT WAS IMPROPERLY SENTENCED TO CONSECUTIVE SENTENCES THAT EXCEED THE MAXIMUM PRISON TERM ALLOWED FOR THE MOST SERIOUS OFFENSE OF WHICH THE APPELLANT WAS CONVICTED."
 I {¶ 63} Appellant, in his first assignment of error, argues that the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal with respect to the domestic violence charge because R.C. 2919.25, the domestic-violence statute, violates the Defense of Marriage Amendment of the Ohio Constitution, and therefore is unconstitutional. We disagree.
 {¶ 64} The Defense of Marriage Amendment, which was adopted by the voters of Ohio on November 2, 2004, and is codified in Section 11, Article XV of the Ohio Constitution, became legally effective 30 days after its adoption. Section 1b, Article II, Ohio Constitution. Section 11, Article XV provides:
 {¶ 65} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." (Emphasis added).
 {¶ 66} As is stated above, appellant was convicted of domestic violence in violation of R.C. 2919.25. R.C. 2919.25
states, in relevant part, as follows:
 {¶ 67} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 68} "(B) No person shall recklessly cause serious physical harm to a family or household member.
 {¶ 69} "(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
 {¶ 70} "(D)(1) Whoever violates this section is guilty of domestic violence."
 {¶ 71} In turn, R.C. 2919.25 states as follows: "(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:
 {¶ 72} "(1) "Family or household member" means any of the following:
 {¶ 73} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 74} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 75} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
 {¶ 76} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
 {¶ 77} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.
 {¶ 78} "(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 79} Appellant maintains that the trial court erred in overruling his Crim. R. 29 motion for judgment of acquittal with respect to the domestic violence charge. He maintains this because R.C. 2919.25, the domestic violence statute, recognizes a legal status or relationship between unmarried parties that is similar to marriage and thus violates the Defense of Marriage Amendment. We disagree. In State v. Newell, Stark App. No. 2004CA264, 2005-Ohio-2848, 2005 WL 1364937, this Court found that "the intent of the Defense of Marriage Amendment was to prohibit same sex marriage. The Defense of Marriage Amendment was specifically adopted in response to the decision of the Massachusetts' Supreme Court in Goodridge v. Department ofPublic Health (2003), 440 Mass. 309, 798 N.E.2d 941 that the Massachusetts' law limiting the protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked a rational basis and violated state constitutional equal protection principles. We agree with appellee that the Defense of Marriage Amendment has no application to criminal statutes in general or the domestic violence statute in particular."Id. at paragraph 43. See also, State v. Edwards, Stark App. No. 2005CA00129, 2005-Ohio-7064, 2005 WL 3642716; Uhrichsville v.Losey, Tuscarawas App. No. 2005 AP 03 0028, 2005-Ohio-6564, 2005 WL 3361100, and State v. Brown, 166 Ohio App. 3d 32,849 N.E.2d 44, 2006-Ohio-1181.
 {¶ 80} Based on the foregoing, we find that the trial court did not err in overruling appellant's Crim. R. 29 motion for judgment of acquittal with respect to the domestic violence charge.
 {¶ 81} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 82} Appellant, in his second assignment of error, argues that his convictions for all of the offenses are against the manifest weight of the evidence. We disagree.
 {¶ 83} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also State v. Thompkins, 78 Ohio St.3d 380,678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 84} Appellant specifically contends that his convictions for all of the offenses are against the manifest weight of the evidence since "[t]he appellee presented no evidence except the testimony of Ms. Childress, who by her own admission has changed her story in his matter . . ." However, the jury, as trier of fact, was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. It is clear that the jury chose to believe Childress' trial testimony that she changed her story several times because she was afraid of appellant who, she testified, had threatened to kill her.
 {¶ 85} We find that, therefore, appellant's convictions were not against the manifest weight of the evidence.
 {¶ 86} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 87} Appellant, in his third assignment of error, contends that the trial court committed plain error in allowing a juror, Mike Workman, to remain on the jury panel when the record demonstrates that Workman was familiar with appellant.
 {¶ 88} However, upon our review of the record, we find that there is no evidence that Workman was familiar with appellant. Nor does appellant point this Court to any such evidence in the record. During voir dire, the trial court specifically asked all of the potential jurors if any of them was familiar with or related to appellant. The response was a unanimous no. We concur with appellate that "[n]othing would have indicated to the trial court that any of the jurors was familiar with the [appellant]."
 {¶ 89} Appellant's third assignment of error is, therefore, overruled.
 IV {¶ 90} Appellant, in his fourth assignment of error, maintains that he received ineffective assistance of trial counsel. Appellant specifically contends that his counsel was ineffective in failing to call witnesses favorable to appellant.
 {¶ 91} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 92} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,
supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 93} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter,72 Ohio St.3d 545, 558, 651 N.E.2d 965, 1995-Ohio-104 (citingLockhart v. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra. at 143, (quotingStrickland, supra. at 697).
 {¶ 94} In the case sub judice, after the State rested, defense counsel indicated to the trial court that two witnesses he had anticipated calling had not appeared or returned his telephone calls and that "[a]t this point, the decision we've made is we're not going to request the court to enforce the subpoena for tactical reasons." Transcript at 311.
 {¶ 95} Upon review, we find that appellant has not demonstrated prejudice as a result of trial counsel's alleged ineffective assistance of trial counsel. There is no evidence in the record as to how these unspecified witnesses would have testified. Rather, appellant merely speculates that the outcome of his trial would have been different, but for counsel's failure to call such witnesses.
 {¶ 96} Appellant's fourth assignment of error is, therefore, overruled.
 IV {¶ 97} Appellant, in his fifth assignment of error, alleges that the trial court erred in sentencing him. Appellant specifically argues that, pursuant to R.C. 2929.19(B)(2)(c), since the offenses in this matter all arose from a single course of conduct, his sentence could not exceed the maximum sentence for the most serious offense of which he was convicted. Appellant notes that the most serious charges that he was convicted of are felonies of the second degree and that the maximum sentence for a felony of the second degree is eight years in prison.
 {¶ 98} R.C. 2953.08(C) states as follows: "In addition to the right to appeal a sentence granted under division (A) or (B) of this section, a defendant who is convicted of or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (E)(3) or (4) of section2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted. * * *."
 {¶ 99} We first note that in the era following the enactment of S.B. 2, but prior to State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856, we recognized that "* * * the right to appeal a sentence under R.C. 2953.08(C) does not mean that consecutive sentences for multiple convictions may not exceed the maximum sentence allowed for the most serious conviction." SeeState v. Beverly, Delaware App. No. 03 CAA 02011,2003-Ohio-6777, paragraph 17, quoting State v. Haines (Oct. 29, 1998), Franklin App. No. 98AP-195, 1998 WL767438.
 {¶ 100} Nonetheless, in Foster, the Ohio Supreme Court found certain provisions of Ohio's sentencing statute unconstitutional because they required judicial fact finding to exceed the sentence allowed simply as a result of a conviction or plea. These provisions included more than the minimum prison term [R.C. 2929.14(B)]; the maximum prison term [R.C. 2929.14(C)]; consecutive prison terms [R.C. 2929.14(E)(4)]; repeat violent offender [R.C. 2929.14(D)(2)(b)]; and major drug offender [2929.14(D)(3)(b)].
 {¶ 101} To remedy Ohio's felony sentencing statutes, the Court severed the offending portions that either create presumptive minimum or concurrent terms or require judicial fact finding to overcome the presumption. Foster at paragraph 97. The Court concluded "* * * that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph 100.
 {¶ 102} Accordingly, because appellant's sentencing is based upon various unconstitutional statutory provisions now deemed void, this matter is remanded to the trial court for a new sentencing hearing.
 {¶ 103} Appellant's fifth assignment of error is, therefore, sustained in part.
 {¶ 104} Accordingly, for the reasons set forth in this opinion, the judgment of the Delaware County Court of Common Pleas is hereby affirmed in part and reversed and remanded in part.
By: Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed as to the convictions and reversed and remanded as to sentencing. Costs assessed to appellant.