OPINION
{¶ 1} Defendant-appellant, Tim L. Banks, appeals from a jury conviction on two counts of abduction with a firearm specification. Appellant was sentenced to three years incarceration on each abduction count to be served concurrently with each other, but consecutive to a three-year term for the firearm specification.
 {¶ 2} At trial, Michelle Stone testified that, on the night of April 18, 2002, she went out on a date with Carl Ballow, after recently breaking up with appellant. She stated she and Ballow returned to her apartment and were watching a video in her bedroom when she heard someone entering the apartment and knew it was appellant because she had previously given him a key, which he had not yet returned. She stated that appellant came to her bedroom and saw her with Ballow. Brandishing a handgun, appellant shouted: "You fuckin' bitch, what are you doing? Who is this?" (Tr. at 46-47.) Appellant then approached Stone, who was in the bed, yanked the covers off of her, and punched her in the head. Stone testified at trial:
And then he goes around and pushes my stand where my TV and my phone are, pushes it back, and unplugs my phones and all that, steadily has the gun pointed at me and Carl, telling us that he's going to shoot both of us. And Carl is like trying to calm him down, telling him that "I don't want her," trying to do everything to — for him to please just put the gun away and at least let him go. I begged Carl not to leave me because I didn't know what he was going to do to me.
He did leave. He did let Carl leave. And my son was already awakened. * * *
(Tr. at 47.)
 {¶ 3} Hearing the noise, Stone's ten-year-old son, Trey, came out of his bedroom and into the hall, where he saw appellant. Appellant let Ballow go. Ballow fled, called 911, and reported the incident to the operator, who dispatched Columbus police to Ballow's location. Ballow then led police to the apartment.
 {¶ 4} Meanwhile, appellant continued to restrain Stone and Trey in Trey's room. Stone testified:
* * * I asked him would he please let me go into my son's room. And I figured he wouldn't hurt me in front of my son. He says, "You fuckin' bitch, I didn't tell you to move." I said, "Well, you're going to have to kill me or whatever you want to do, but I have to get in there with my son." I got up out of bed and I went in and I sat with my son. And I was holding my son. He was crying. And I had to use the restroom, and I told him that I had to use the restroom, and I started to get up and he says, "I didn't tell you to move." * * *
(Tr. at 47-48.)
 {¶ 5} Appellant then permitted Stone to leave Trey's bedroom to go to the bathroom. Stone and Trey then went into the bathroom briefly, and then, as appellant continued to hold a weapon on them and threaten them, they noticed that police had arrived. Stone gave the following account:
A. I said, "just let me tell them that everything is okay, that we had an argument, you're not here anymore," just anything for me to get outside with my son to safety.
Q. Did you tell the defendant he should go someplace?
A. Yes, I told him to go hide in my son's closet, that I will tell the police that you're not here.
* * *
A. * * * And he says, "Trey's going with me," and I said, "no, he's not." And he's pulling my son's arm to take him with him, to keep him with him while I go outside. And I say, "no, he's not. He's coming with me." I finally persuade Tim to go hide.
So I get — I open the front door, and I have my son, and me and my son go down and let the police officers in. I run out to the police officers. They come upstairs.
(Tr. at 49-50.)
 {¶ 6} Stone testified that, as she stood outside her building telling police what had happened, she heard a slamming noise, and suspected that appellant had exited the rear of the building through her son's bedroom window. Both she and Ballow stated, "there he goes" upon seeing appellant run away from the rear of the building. (Tr. at 51, 185-186.) However, police were unable to apprehend appellant. Police searched the parking lot and found appellant's Chevrolet Corvette, which was parked out of sight of the apartment, although Stone stated on other visits appellant normally parked within sight of her apartment. Police impounded the car.
 {¶ 7} Appellant remained at large until the next evening, when Stone, in cooperation with police, contacted appellant on his cell phone and arranged a meeting spot at a motel. When appellant drove into the motel parking lot, a police S.W.A.T. team pursued him. Appellant attempted to flee but, after wrecking his vehicle, was chased on foot and apprehended. At the time of his arrest, appellant was carrying a loaded handgun.
 {¶ 8} A grand jury indicted appellant on two counts of kidnapping, two counts of abduction, one with a firearm specification, and one count of aggravated burglary. Appellant pled not guilty.
 {¶ 9} At trial, the state presented testimony by Stone, her son, the 911 operator, and several members of the Columbus Police Department involved in the investigation and arrest. The state was unable to locate Ballow, but the trial court, over appellant's objection, permitted the state to introduce the tape of Ballow's 911 call. Through other witnesses, the state also introduced Ballow's statement of "there he goes" upon seeing someone running from the rear of the apartment building.
 {¶ 10} The jury found appellant not guilty of the kidnapping and burglary counts, but guilty of both abduction counts. The trial court then sentenced appellant to a total of six years imprisonment: three years each on the abduction counts, to be served concurrently; and three years actual incarceration for the firearm specification, to be served consecutively.
 {¶ 11} Appellant now assigns the following as error:
I. The trial court committed plain error in allowing the prosecuting attorney to introduce hearsay testimony through state witnesses, thereby depriving Appellant of his Right of Confrontation as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
II. The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the comparable provisions of the Ohio Constitution by overruling Appellant's Crim.R. 29 Motion for Acquittal under the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charge of abduction was against the manifest weight of the evidence.
III. The trial court committed plain error by preventing defense counsel from using Evidence Rule 404 and 405 to impeach a witness, thereby depriving Appellant of his right to a fair trial as guaranteed by the United States and Ohio Constitutions.
IV. The failures of Appellant's trial counsel constituted ineffective assistance, thereby depriving Appellant of his rights as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 12} Appellant's first assignment of error argues the trial court erred in allowing the introduction of hearsay evidence to bolster Stone's version of the events leading to appellant's arrest. The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987),31 Ohio St.3d 173. To find an abuse of discretion, this court must determine the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 13} Specifically, appellant objects to:
 {¶ 14} 1. Stone's testimony that she heard Ballow say "there he goes" while they stood outside the apartment building after police arrived (Tr. at 185-187);
 {¶ 15} 2. Testimony by Sergeant Jeff A. Matthias, Officer Harold Conley, and Detective John A. Weeks regarding Stone's statements to them (Tr. at 204-209, 281);
 {¶ 16} 3. Testimony by 911 operator Charlotte Smith identifying the 911 tape, and the admission of the tape itself, which appellant alleges contained statements by Ballow that did not qualify as exceptions to the hearsay rule (Tr. at 244-247).
 {¶ 17} Appellant claims these admissions violated hisSixth Amendment right to confrontation. As supporting authority he directs us to the recent United States Supreme Court case ofCrawford v. Washington (2004), 541 U.S. 36, in which the court rejected its previous position that an unavailable witness' out-of-court testimonial statements are admissible so long as the court finds sufficient indicia of reliability. Crawford now requires the exclusion of testimonial statements by unavailable witnesses unless the state establishes the witnesses are unavailable and the defense had a prior opportunity to cross-examine them.
 {¶ 18} Appellant's reliance upon Crawford is misplaced. The holding in Crawford only applies to statements that are, in fact, hearsay, and that are not subject to common-law exceptions to the hearsay rule, such as excited utterance or present sense impression. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements that are not intended to prove the truth of what was said are not hearsay. State v. Davis (1991),62 Ohio St.3d 326, at 343. The trial court determined, and we agree, that some of the statements to which appellant objected were not hearsay because they were not being offered for the truth of the matter asserted. The court determined the remaining objectionable statements qualified as excited utterances or present sense impressions and, therefore, were exceptions to the hearsay rule.
 {¶ 19} For example, the purpose of Sergeant Mathias' testimony was to describe, for the jury, the events leading up to appellant's arrest at the motel. A part of that testimony included statements Stone made to Sergeant Mathias about appellant. As the court explained to the jury, Sergeant Mathias' intention in repeating what Stone told him was not to bolster Stone's credibility, but to explain Sergeant Mathias' actions on the night he arrested appellant. Such statements serve to explain police conduct and are generally admissible so long as the conduct explained is relevant, equivocal, and contemporaneous with the statements. State v. Williams, Franklin App. No. 02AP-730, 2003-Ohio-5204, at ¶ 48, citing State v. Blevins
(1987), 36 Ohio App.3d 147. Sergeant Mathias' testimony meets this test and was, therefore, admissible. Furthermore, as inWilliams, the court gave the jury a limiting instruction not to consider the statement for the truth of the matter asserted, but as an explanation of Sergeant Mathias' conduct. That instruction cured any potential prejudice from Sergeant Mathias' statements.
 {¶ 20} Similarly admissible was testimony by Officer Conley and Detective Weeks regarding their investigation of the crime, their efforts to locate appellant, and their search of the apartment and the parking lot. All of the described conduct was relevant, equivocal, and contemporaneous with the statements made. In addition, the trial court continued to offer cautionary instructions to the jury that officers' reiteration of statements by Ballow and Stone were only being offered to show why officers did what they did. Therefore, we conclude that testimony by Sergeant Mathias, Officer Conley and Detective Weeks was not, in fact, hearsay and were properly admitted by the trial court.
 {¶ 21} Next we consider appellant's argument that Ballow's statements to the 911 operator, and his alleged statement to Stone and police officers of "there he goes," did not fall within recognized exceptions to the hearsay rule and, therefore, were inadmissible. The trial court found these statements to be either excited utterances or present sense impressions. Evid.R. 803(1) defines a present sense impression as: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(2) defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ballow's statements to the 911 operator would qualify under either of these exceptions and, therefore, were properly admitted. See State v. Marbury, Montgomery App. No. 19226,2004-Ohio-1817; State v. Holloway, Franklin App. No. 02AP-984, 2003-Ohio-3298. His alleged statement of "there he goes" would similarly qualify as a present sense impression. But even if it did not so qualify, we do not find its introduction to have been prejudicial to appellant since it was not the only, or even the most persuasive, evidence linking appellant to the alleged crimes. Because the statements to which appellant objects are either not hearsay or subject to hearsay exceptions, we find the trial court did not abuse its discretion in admitting them. Therefore, we overrule appellant's first assignment of error.
 {¶ 22} Appellant's second assignment of error essentially charges that the manifest weight of the evidence did not support his conviction.
 {¶ 23} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, at 387. The appellate court, however, must bear in mind the trier of fact's superior, first hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
 {¶ 24} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and to determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58.
 {¶ 25} Under this assignment of error, appellant specifically asserts that Stone inconsistently testified regarding both her phone calls to appellant and events she observed while standing outside her apartment with police. The transcript reveals that appellant introduced Stone's cell phone records indicating a large volume of calls to appellant's phone. Stone admitted she frequently phoned appellant both before and after the incident; however, Stone explained that the phone calls before the incident were attempts to locate appellant, to tell him she wanted to break up, and to attempt to obtain an explanation from him regarding his behavior toward her. She also explained that her phone calls after the incident were an attempt to assist police in locating and apprehending appellant. She additionally explained that not every call was answered, even though her cell phone service provider had recorded that the number had been dialed. The theory of appellant's defense was apparently that: the phone calls were evidence that he and Stone were still romantically involved; his entry to her apartment, using the key she had given him, was with Stone's permission; Stone intended that he discover her with Ballow; and Stone lied about the events of that night in order to stage a dramatic break up using law enforcement officers. However, any inconsistencies in Stone's statements about the phone calls went to Stone's credibility, not to the manifest weight of the evidence. Regardless of the content or purpose of Stone's calls to appellant before or after the incident, the jury had to decide whether to believe Stone's account of the events of that night.
 {¶ 26} Similarly, Stone's testimony regarding events occurring after appellant released her and her son from the apartment, even if inconsistent, would not merit a reversal on manifest weight grounds. Stone's testimony suggested that, after she left her apartment and was standing with Ballow and police outside the building, she was still upset about events that occurred in her apartment, and that she remained frightened because appellant was not yet in police custody. Given this scenario, the jury could attribute inconsistencies in her account of events to her distress, and not to an intent to fabricate a lie in order to obtain appellant's arrest.
 {¶ 27} Appellant also argues that the state failed to prove abduction because it did not prove either that appellant used force or that Ballow was abducted. R.C. 2905.02 prohibits any person, without privilege, from knowingly removing another person from a place or restraining the liberty of another, by force or threat, under circumstances that create a risk of physical harm to the victim or place the other person in fear. Stone's testimony, found credible by the jury, was that appellant held her and Ballow at gunpoint. This is force, regardless of whether appellant eventually allowed Stone and her son to leave their apartment. Appellant suggests that, unless Stone, Ballow or Trey sustained bodily harm, the state did not prove force. The definition of force in R.C. 2905.02, however, permits conviction where the "force or threat" is proven. Clearly, holding someone at gunpoint could be perceived to be a "force or threat." Moreover, Stone also testified that appellant struck her in the head and grabbed her arm, which swelled and required medical attention and time off work, thus, the state proved force because appellant actually did injure Stone. Finally, evidence established that both Ballow and Trey were present when appellant injured and threatened Stone; thus, the jury would have been justified in believing the threat of force extended to Ballow and Trey as well.
 {¶ 28} The absence of Ballow as a witness at trial is also not relevant to the manifest weight question. As this court stated in State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 35:
* * * [Abduction] requires proof that the accused knowingly restrained the liberty of another person by force or threat under circumstances that create a risk of physical harm to the victim or place the other person in fear. The omission of the name of the victim from an indictment does not invalidate it as a legally sufficient charging instrument. * * * Similarly, proof of the identity of the alleged victim is not required when it is not an essential element of the offense.
(Emphasis sic.)
 {¶ 29} In this case, both Stone and Trey testified that Ballow was in the apartment with them when appellant first entered the scene. Stone also testified that Ballow was outside with police when she exited the apartment. Stone identified Ballow's voice on the 911 tape, and the 911 operator verified the contents of the tape. Ballow's statements on the tape, admitted as excited utterance or present sense impression exceptions to the hearsay rule, indicated he was in the apartment and that appellant had held him at gunpoint. In addition, Officer Conley testified that a man named Ballow had led him to the apartment that night. All of this evidence, if believed by the jury, weighed on the side of conviction. Based upon these considerations, we overrule appellant's second assignment of error.
 {¶ 30} Appellant's third assignment of error alleges the trial court should have permitted appellant to introduce character evidence regarding Stone in order to impeach her testimony pursuant to Evid.R. 404 and 405.[1] As we have already indicated, the defense sought to introduce its theory that, because Stone's previous relationships with men had ended with the involvement of law enforcement officers, Stone had fabricated the incident involving appellant with the goal of procuring appellant's arrest. The trial court refused to permit the defense to introduce evidence of Stone's previous relationships for several reasons: it would unnecessarily draw out the trial with extraneous evidence of past relationships and criminal proceedings against other defendants; the introduction of such evidence would shift the focus of the trial from appellant's conduct to Stone's; and, even if Stone had repeatedly engaged in relationships ending in the arrest of her male friends, this did not necessarily mean she had lied in order to frame appellant for a crime he did not commit. As the trial court stated, Stone simply may have a "lousy choice of men." (Tr. at 164.) All of these were valid reasons for excluding this evidence.
 {¶ 31} In any event, as we have noted, this evidence would have gone to Stone's credibility, which the jury was capable of assessing even without additional evidence regarding Stone's romantic history. The evidence sought to be introduced was extraneous to the issue of whether appellant knowingly restrained the liberty of Stone and Ballow by force or threat of force. Therefore, we overrule appellant's third assignment of error.
 {¶ 32} Appellant's fourth assignment of error charges that his trial counsel provided ineffective assistance. The two-prong test for determining ineffective assistance is found inStrickland v. Washington (1984), 466 U.S. 668, at 687, in which the court held:
* * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. * * *
 {¶ 33} In support of this argument, appellant focuses upon direct examination testimony by Stone's son, Trey. According to appellant, his counsel should have objected when the prosecution asked leading questions regarding whether Trey actually saw a gun in appellant's hand. Apparently, there was a discrepancy between what Trey told an investigating officer and what Trey testified to at trial. However, our test is whether counsel's error, if it was in fact an error and not simply trial strategy, was so serious that he was not functioning as counsel and appellant was deprived of a fair trial. In this case, even if counsel should have objected, and even if the trial court should have sustained such an objection, the remaining testimony by other witnesses connecting appellant to the gun and supporting Stone's version of events, if believed, weighed in favor of appellant's conviction. Thus, we cannot say any deficiency by appellant's counsel with regard to Trey's testimony deprived appellant of a fair trial. We therefore overrule appellant's fourth assignment of error.
 {¶ 34} Based upon these considerations, appellant's first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus, P.J., and Sadler, J., concur.
[1] "Evid R 404 Character evidence not admissible to proveconduct; exceptions; other crimes
"(A) Character evidence generally
"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
"* * *
"(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
"* * *
"(B) Other crimes, wrongs or acts
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
"Evid R 405 Methods of proving character
"(A) Reputation or opinion
"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
"(B) Specific instances of conduct
"In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."