JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Roy Pompa ("defendant"), appeals from his convictions in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm.
 {¶ 2} The indictment in this case grew out of the execution of three search warrants by the Brookpark Police Department on defendant's residence. The first warrant was executed on December 4, 2006. The search warrant directed officers to search for computers, equipment, data storage devices, records, and other items related to the distribution and possession of child pornography.
 {¶ 3} Richard Warner, an investigator with the Cuyahoga County Prosecutor's Office Internet Crimes Against Children Task Force, along with other law enforcement officers, conducted a search of defendant's home for the items described in the warrant. During the search, the officers discovered a wireless pinhole spy camera, which is often used to make child pornography. The officers also discovered a number of Compaq VHS tapes with posted notes with handwritten titles and dates on them. Some of these titles included "A — — Changing her Panties," "R — — Up Skirt" and "J Pussy."
 {¶ 4} The officers reviewed two of the tapes and saw images of two young girls getting dressed and of an adult male's hand pulling the panties aside of a sleeping young girl and rubbing the vaginal area. Shortly after viewing the tapes, the officers called the prosecutor for advice on the situation. Thereafter, the officers arrested the defendant and advised the defendant's wife that her children or neighborhood children may have been the *Page 4 
victims of sexual abuse. The defendant's wife told the officers that the names found on the tapes were friends of their two daughters.
 {¶ 5} On December 5, 2006, a second search warrant was executed authorizing a forensic examination of the computer, storage media, and videotapes seized the previous day. Investigator Warner determined that the tapes contained scenes of sexual activity with minor children and that the tapes were made inside the defendant's residence. Investigator Warner also determined that the images suggested that the minor children may have been drugged during the sexual activity.
 {¶ 6} On December 7, 2006, a third search warrant was executed directing officers to search defendant's residence. As a result of this search, officers seized additional videotapes and a white plastic tray that had prescription sleeping drugs, a pill crusher, a needle, and a syringe.
 {¶ 7} On March 14, 2007, the Cuyahoga County Grand Jury indicted defendant on one count of pandering obscenity involving a minor in violation of R.C. 2907.321; 17 counts of rape in violation of R.C. 2907.02; five counts of kidnapping in violation of R.C. 2905.41; 55 counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322; 21 counts of gross sexual imposition in violation of R.C. 2907.05; two counts of illegal use of a minor in nudity-oriented material/performance in violation of R.C. 2907.323; one count of disseminating obscene matter to juveniles in violation of R.C. 2907.31; one count of corrupting another with drugs in violation of R.C. 2935.02; and one count of possession of criminal tools in violation of R.C. 2923.24. *Page 5 
 {¶ 8} On January 26, 2007, defendant filed a motion to suppress all evidence relating to the videotapes seized from his residence on December 4, 2006, arguing that the search exceeded the scope of the search warrant. After a hearing, the trial court denied the motion to suppress noting that the police "strictly adhered to the guidelines that were outlined by the Court" and that the police, when presented with the initial tapes titled "Rose Up Skirt" and "Alice Changing," "would certainly indicate to most thinking human beings that the possibility that was or a probability existed for there to be pertinent evidence on those tapes."[1]
 {¶ 9} Following a jury trial, the defendant was found guilty of all charges, except nine counts of pandering sexually oriented matter involving a minor and sentenced to life in prison.
 {¶ 10} Defendant timely appeals and raises two assignments of error for our review.
 {¶ 11} "I. The trial court erred by not granting appellant's motion to suppress."
 {¶ 12} In his first assignment of error, defendant argues that the December 4, 2006 search warrant did not authorize the police to seize the videotapes of his crimes from his residence. Specifically, defendant asserts that the warrant only allowed seizure of items relating to the "downloading of illegal images and movies from over the internet on a computer and computer storage materials" and that the videotapes labeled "J J------ Pussy," "R — Up Skirt" and "A A---- Changing" were outside the scope of the warrant. *Page 6 
 {¶ 13} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Hopfer (1996), 112 Ohio App.3d 521,548. Accordingly, "[a]n appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998), 127 Ohio App.3d 414, 416.
 {¶ 14} Here, the warrant authorized the seizure of computers, computer disk, computer related equipment (CD's, CD Rom, computer programs) and any type of child erotica and material relating to children. The warrant also allowed seizure of all media including video and audio tapes. Investigator Warner testified that pictures and/or films depicting child pornography are easily transferred to videotape. Given the fact that the images on a videotape are not readily apparent by mere observation, the police were justified in seizing them in order to fully review their contents to determine if they were evidence of the crimes the defendant had allegedly committed. See State v. McGuire (Dec. 14, 1994), Summit App. Nos. 16423 and 16431.
 {¶ 15} We conclude that the police in this case did not exceed the scope of the search warrant by seizing the videotapes. The police could reasonably have believed that the videotapes contained images that were the subject of the search warrant given that they were *Page 7 
labeled in a manner that were readily recognizable as containing voyeuristic and pornographic content. Defendant's contention that the videotapes could have been innocent, i.e., "J Pussy" could have been about a "pet cat," are simply ridiculous in light of the fact that the officers were inside the home seeking evidence of child pornography.
 {¶ 16} Accordingly, we find that videotapes seized from defendant's residence were connected to the investigation of child pornography and were properly seized pursuant to the December 4, 2006 warrant.
 {¶ 17} The first assignment of error is overruled.
 {¶ 18} "II. The trial court erred by not sustaining objections to inadmissible hearsay evidence which cause harmful prejudice to the defendant."
 {¶ 19} In his second assignment of error, defendant argues that his case was prejudiced when the trial court improperly allowed several witnesses to testify. Specifically, defendant claims that he was unfairly prejudiced by the introduction of hearsay testimony.
 {¶ 20} Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Because the admission of hearsay testimony, unless it falls within a firmly rooted exception, violates the Confrontation Clause of the United States Constitution, it is an error with constitutional ramifications.White v. Illinois (1992), 502 U.S. 346, 356. In order to find constitutional error harmless, this Court must find beyond a reasonable doubt that the error did not contribute to the verdict. Chapman v.California (1967), 386 U.S. 18, 24. With *Page 8 
these principles in mind, we shall address each of the witnesses that defendant complains about.
Vanessa W.
 {¶ 21} Here, Vanessa W., [2] the mother of D.W. and J.W., two of the victims, testified that D.W. asked her "When will all this be over?" and that J.W. told her that the defendant gave her drinks before bedtime and that the drinks tasted terrible. This testimony could arguably be admissible pursuant to Evid. R. 803(1) or (3) as statements of present sense impression or existing state of mind, emotion, sensation, or physical condition. However, even if we agree that this testimony was improperly allowed, we find no prejudice to the defendant. J.W. testified directly as to the drinks she was given and their effect upon her. Accordingly, defendant has not satisfied his burden that the outcome of the trial would have been different had the testimony of Vanessa W. not been admitted.
Mary Lou N.
 {¶ 22} Here, Mary Lou N. and her daughter S.N. testified that defendant wrote an email to S.N. calling his daughter D.P. "stupid" and a "slut." This testimony is not hearsay, since both parties read the letter and are merely testifying as to what they saw and read.
Kelly B.
 {¶ 23} Here, Kelly B., the mother of A.B., one of the victims, testified that A.B. told her that she did not want to sleep at the defendant's house any more because the defendant *Page 9 
made her uncomfortable. Again, this testimony could arguably be admissible pursuant to Evid. R. 803(1) or (3) as statements of present sense impression or existing state of mind, emotion, sensation, or physical condition. However, even if we agree that this testimony was improperly allowed, we find no prejudice to the defendant. A.B. testified directly as to her feelings and unease about the defendant. Accordingly, defendant has not satisfied his burden that the outcome of the trial would have been different had the testimony of Kelly B. not been admitted.
Joanna W. (formerly Pompa)
 {¶ 24} Here, the ex-wife of the defendant, Joanna W. testified that her daughter told her that A.B. did not want to sleep over their house anymore. Since A.B. testified directly as to this fact, defendant cannot show that he was prejudiced by this testimony. Joanna W. also testified that the defendant told her that he was reading books about sexual predators and pedophiles because he wanted to protect his daughters. This testimony is admissible pursuant to Evid. R. 801(D) as an admission by a party. Accordingly, defendant has not satisfied his burden that the outcome of the trial would have been different had the testimony of Joanna W. not been admitted.
Richard Warner, Charles Gute, and Timothy Robinson
 {¶ 25} Here, Investigator Warner and Detectives Charles Gute, and Timothy Robinson all testified to statements made by Joanna W. and her daughter during the course of their *Page 10 
investigation. Specifically, that the defendant's daughter D.P., told them that she had seen pornography on her father's computer and that Joanna W. told them that the names on the videotapes were names of friends of her daughters.
 {¶ 26} As an initial matter, we note that statements that serve to explain police conduct are generally admissible so long as the conduct explained is relevant, equivocal, and contemporaneous with the statements. State v. Banks, Franklin App. No. 03AP-1286, 2004-Ohio-6522. Moreover, defendant cannot show that he was prejudiced by this testimony, since both Joanna W. and D.P. testified directly as to this information.
 {¶ 27} In sum, any error from the testimonies complained of is harmless because the remaining evidence standing alone constitutes overwhelming proof of the defendant's guilt: to wit, the testimonies of the victims and the fact that he videotaped his crimes against them.
 {¶ 28} The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
ANN DYKE, J., and MARY J. BOYLE, J., CONCUR
[1] Tr. 188-89.
[2] The parties are referred to herein by their initials or title in accordance with this Court's established policy regarding non-disclosure of identities of juveniles. *Page 1