[Cite as *In re C.C.*, 2020-Ohio-6896.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE C.C., | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| | : | |
| | : | |
| | : | Case No. 2020 CA 0050 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County
Court of Common Pleas, Juvenile
Division, Case No. 2020-DEL-0040

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      December 24, 2020

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

GARY BISHOP          DARIN AVERY
Prosecuting Attorney          105 Sturges Avenue
Richland County, Ohio          Mansfield, Ohio 44903

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1} Appellant, C.C., appeals the decision of the Richland County Court of Common Pleas, Juvenile Division, finding him delinquent for committing abduction in violation of R. C. 2905.02 (A)(2); tampering with evidence in violation of R. C. 2921.12(A)(1); carrying a concealed weapon in violation of R. C. 2923.12(A)(2); and, obstructing official business in a manner that created a risk of physical harm to any person in violation of R. C. 2921.31(A)/(B). Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2} E. C., her brother M. C., and their friends L. J. and A. C. had just left an after school program and were throwing rocks at the ice on a frozen stream when A.C. fell through the ice. While the others were helping A.C. from the ice, three people entered a bridge crossing the creek. One of them was holding a cell phone, as if he was recording the students, and making comments that E.C. and the others apparently overheard. M. C. responded that the statements were racist and another of the students, L.J., stated he was Mexican.

{¶3} In response to the comment made by L.J. that he was Mexican, the person holding the cell phone passed his phone to one of the others with him, pulled what E.C. and M.C. described as a gun out of his backpack, and stated " Oh yeah, well I got something for Mexicans," and made an action that the students described as cocking the gun or moving the slide back, accompanied by a metallic sound. M.C. froze when he saw the firearm and A.C. said "please don't shoot" and began to back away. The person with

the gun pointed it at her and asked "where do you think you're going." A.C. stopped. She and her friends did not feel free to move while under the threat of the gun.

{¶4} After approximately thirty seconds the person holding the weapon ran off with his colleagues and one of the students used another's cell phone to dial 911. The four friends ran off as well.

{¶5} Patrolman Bryce Edwards was dispatched to the scene and Patrolman Nicholas Stevens followed behind him. When Edwards arrived he saw two people matching the description given by the dispatcher and, as he brought his cruiser to stop, one of them began to run. Patrolman Edwards told the other person to remain where he was and began chasing the person who had run. He ordered the person to stop, but he continued to flee. Patrolman Edwards noticed that the fleeing person removed his backpack, reached inside and then returned the pack to his back. Patrolman Edwards lost sight of the suspect when he slipped on the ice and fell and when the suspect turned left and was momentarily obscured by a house. He continued pursuit until other officers arrived and the fleeing individual, later identified as C.C., was apprehended.

{¶6} The officers searched C.C. and his backpack, but found no firearm. Patrolman Edwards and other officers searched the path of the chase but found no weapon.

{¶7} Patrolman Stevens, the second officer on the scene, approached the person who was walking with C.C. when Patrolman Edwards arrived, identified him as Labron Hamner, determined he was not armed, and placed him in the cruiser while he assisted Patrolman Edwards.  In an exchange between he and Patrolman Stevens, Mr.

Hamner confirmed that C.C. was carrying a gun in his backpack and that M.C.'s and E.C.'s statements that C.C. had threatened them and their friends were accurate.

{¶8}    On March 15, 2020, a child found and discharged a firearm near where C.C. was apprehended. Officer Stevens searched the Police Department database using the addresses where the gun was located and found no police calls reporting violent incidents or use of a firearm where the gun was found.

{¶9}    On January 20, 2020 the state filed a complaint alleging C.C. was delinquent for committing  abduction in violation of R.C. 2905.02(A)(2) a felony of the third degree if committed by an adult; tampering with evidence in violation of R.C. 2921.12(A)(1) a felony of the third degree if committed by an adult; one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2) a felony of the fourth degree if committed by an adult; four counts of aggravated menacing in violation of R.C. 2903.21(A) misdemeanors of the first degree if committed by an adult and one count of obstructing official business in violation of R.C. 2921.31 (A), a misdemeanor of the second if committed by an adult. The last count was amended prior to trial to make the obstructing official business count a fifth degree felony.

{¶10}  The matter was presented to the Juvenile Division of the Court of Common Pleas on June 10, 2020. On June 17, 2020, the court issued a decision that C.C. had committed the offenses as alleged except the carrying concealed weapon charge, which was reduced to a misdemeanor of the third degree if committed by an adult. He was sentenced to a suspended Department of Youth Services commitment on several of the counts and ordered to serve probation, including completion of a treatment program at the

Multi-County Juvenile Attention System in Massillon, Ohio. Appellant filed a notice of appeal and submitted four assignments of error:

**{¶11}** "I. THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT COMMITTED ABDUCTION IN VIOLATION OF R.C.2905.02(A)(2)."

**{¶12}** "II. THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT COMMITTED TAMPERING WITH EVIDENCE IN VIOLATION OF R.C. 2921.12(A)(1)."

**{¶13}** "III. THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT CARRIED A CONCEALED WEAPON IN VIOLATION OF R.C. 2923.12(A)(2)."

**{¶14}** "IV. THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT OBSTRUCTED OFFICIAL BUSINESS IN A MANNER THAT CREATED A RISK OF PHYSICAL HARM TO ANY PERSON IN VIOLATION OF R.C. 2921.31 (A) AND (B)."

### STANDARD OF REVIEW

**{¶15}** C.C. describes four assignments of error in which he asserts that the record contains insufficient evidence to support the finding of delinquency for the charges described in the assignments. We will review the record for the sufficiency of evidence for all assignments.

**{¶16}** We apply the same standard of review for sufficiency of the evidence in juvenile delinquency adjudications as for adult criminal defendants. *In re T.R.,* 5th Dist. Guernsey No. 10CA000002, 2010-Ohio-4419, ¶ 11. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**I.**

**{¶17}** In the first assignment of error, C.C. contends the record contains insufficient evidence to find that he committed abduction because it lacks evidence of a restraint of liberty. C.C. argues that he did not physically restrain any of the students, and did not instruct them to remain still.

**{¶18}** C.C. was charged with abduction, a violation of R.C. 2905.02(A)(2) which states "No person, without privilege to do so, shall knowingly *** [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." C.C. pointed what E.C. and M.C. identified as a gun in their direction while directing a comment to L.J. that he "had something for a Mexican" and, when A.C. began backing away, asking "where do you think you're going?" Those statements, taken in context with the circumstances, support a finding that C.C. intended to cause fear and restrict the liberty of the students. The students testified that they were frightened and remained motionless. A.C. plead with C.C. to not shoot, E.C. called 911 and the four hurried from the scene. C.C. did not physically touch or restrain the students and did not order them to remain still, but his actions conveyed the threat that the students were not free to move in a manner sufficient to fulfill the elements of the statute regarding the use of force or threat. "Clearly, holding someone at gunpoint could be perceived to be a 'force or threat.' " *State v. Banks,* 10th Dist. Franklin No. 03AP-1286, 2004-Ohio-6522, ¶ 27.

**{¶19}** Construing the facts most favorably to the prosecution, we find sufficient evidence to support the finding, beyond a reasonable doubt, that C.C. violated R.C. 2905.02(A)(2) and deny the first assignment of error.

## II.

{¶20} C.C. next argues that the charge of tampering with evidence fails because the record contains no evidence that he disposed of a firearm as he ran from Patrolman Edwards.

{¶21} Revised Code 2921.12(A)(1) prohibits "alter[ing], destroy[ing], conceal[ing], or remov[ing] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation" if that person knows "that an official proceeding or investigation is in progress, or is about to be or likely to be instituted." We have reviewed the record in this case and, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of tampering with evidence proven beyond a reasonable doubt.

{¶22} E.C. and M.C. identified C.C. as the person with the firearm at the scene and further, that he retrieved it from his backpack before pointing it at them. C.C. fled when Patrolman Edwards approached and, during the chase, he removed his backpack, reached into it and replaced his backpack. Officer Edwards did not see C.C. throw a firearm, but he did lose visual contact on two occasions. Finally, in response to a question from C.C.'s counsel, Officer Stevens testified that Labron Hamner, the person who was with C.C. that day, confirmed that C.C. had a firearm and that Hamner's statements matched the description of events provided by the victims, providing further support for a conclusion that C.C. possessed a firearm and later disposed of it.

{¶23} Finally, a handgun was found in the area of the chase fifty-three days later. While the discovery of this firearm is far from conclusive, it is a relevant piece of evidence

that, when combined with the facts presented to the court, serves to confirm that there was sufficient evidence before the court to support a finding, beyond a reasonable doubt, that C.C. had disposed of a weapon and committed the offense of tampering with evidence

{¶24} The second assignment of error is overruled.

### III.

{¶25} In his third assignment of error, C.C. contends the evidence did not support a conviction for a violation of R.C. 2923.12(A)(2), carrying a concealed weapon, because there was no evidence that the gun was operable.  And, while a gun was recovered fifty-three days later, the record fails to demonstrate that this gun was the firearm brandished by C.C.

{¶26} The witnesses testified that C.C. pulled the firearm from inside a backpack, so it was clearly concealed.  Officer Stevens testified that Hamner confirmed that C.C. was carrying a gun and that Hamner's statement was consistent with the statements of the victims.  "Concerning operability, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 86.  The Supreme Court of Ohio addressed this issue in *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997) where it held that "given our holdings in *Dixon* and *Murphy, supra*, it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable."  We are bound to follow the precedent in *Thompkins,* so we find that

the actions of C.C. and the parties involved and the testimony of the witnesses provide sufficient evidence to support a finding beyond a reasonable doubt that C.C. was carrying a concealed weapon in violation of R.C. 2923 .12(A)(2).

**IV.**

{¶27} In his fourth assignment of error, C.C. contends there was insufficient evidence to support a finding that he obstructed official business in violation of R.C. 2921.31(A) and (B). The charge is based upon Patrolman Edwards fall on the ice while in pursuit of C.C. C.C. claims the record contains no evidence that would put him on notice of the risk to the officer of falling on the ice and that it was the negligence of Patrolman Edwards and not C.C. that resulted in his fall.

{¶28} We addressed this issue in *In re E.C.*, 5th Dist. Muskingum No. CT2012-0048, 2013-Ohio-2584, where the pursuing officer slipped and fell on ice when he attempted to capture the fleeing E.C. We found that "when Appellant was attempting to flee he caused a 'risk of physical harm' " to the pursuing deputy and when the deputy "slipped on the ice and fell to the ground as he was attempting to capture and restrain Appellant, there was a significant possibility that any of the deputies could have suffered physical harm that could result in pain." *Id.* At ¶ 44. C.C. was certainly aware that the weather was cold enough to create ice, having recently crossed a bridge over a frozen stream and it was C.C.'s fleeing the scene, ignoring the command to stop, that triggered the officer's duty to pursue.

{¶29} C.C. contends the officer had no duty to pursue C.C. or that he was negligent in doing so. We reject that contention and instead conclude that "[f]ailure, on the part of a police officer, to pursue an individual [who had allegedly brandished a firearm

at others] could constitute neglect of a police officer's sworn duties to protect the public."

*Vince v. City of Canton,* 5th Dist. Stark No. 1997CA00299, 1998 WL 525570, *5. Patrolman Edwards was fulfilling his sworn duty to protect the public from a potentially dangerous suspect as he pursued C.C..

**{¶30}** We find sufficient evidence to support a finding beyond a reasonable doubt of a violation of R.C. 2921.3l(A) and (B). Appellant's fourth assignment of error is denied.

**{¶31}** The decision of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, Earle, J. concur.